UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 1:09cr118 |
| | ) |
| ROBERT L. COLE, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court on a "Pro Se Motion for Compassionate Relief (DE 105), filed by the defendant, Robert L. Cole ("Cole") on January 27, 2021. On this same date Cole filed a "Motion to Appoint Counsel" (DE 106). After referral to the Federal Community Defenders, this court received a "Notice of Non-Representation" on February 4, 2021 (DE 111). Cole then filed a supplement to his Motion to Compassionate relief on February 16, 2021. The Government file its Response on February 18, 2021(DE 113).

For the following reasons, both motions will be denied.

Discussion

Cole was charged by way of one count Complaint on November 18, 2009, with distribution of 5 grams or more, but less than 50 grams of a cocaine base "crack." (DE 1). On December 16, 2009, a Federal Grand Jury returned a 4 count Indictment against Cole. (DE 16). The Indictment charged Cole with Counts 1 and 2, distribution of 5 grams or more, but less than 50 grams of cocaine base "crack;" Count 3, possession with intent to distribute 5 grams or more but less than 50 grams of cocaine base "crack;" and Count 4, carrying a firearm during and in relation to a drug trafficking crime. *Id*.

On February 9, 2010, Cole entered a plea of guilty to Count 3 and Count 4 of the Indictment pursuant to a plea agreement for a binding term of 240 months imprisonment. (DE 27). Cole agreed to waive his right to appeal or contest his conviction and all components of his sentence or the manner in which his sentence was determined or imposed on any ground, other than ineffective assistance of counsel, pursuant to his plea agreement.

On February 26, 2010, the Court adopted the Magistrate Judge's Report and Recommendation and adjudicated Cole guilty. (DE 32). On May 17, 2010, the Court accepted the terms of the binding plea agreement and sentenced Cole to 240 months in the Bureau of Prisons, followed by five years of supervised release. (DE 39). Cole is currently serving his sentence at the Federal Correctional Institute at Oakdale, LA and has a release date of July 13, 2027.

As noted, on January 27, 2021, Cole filed a letter requesting the Court grant him compassionate release. (DE 106).  Cole states that he is 43 years old, suffers from diabetes, high blood pressure, and asthma.  He claims these ailments put him at increased risk of severe illness from Covid-19.

A district court's statutory authority to modify an imposed term of imprisonment is set forth in 18 U.S.C. § 3582(c), which states that "the court may not modify a term of imprisonment once it has been imposed except" when the defendant satisfies the criteria listed in the statute. The defendant bears the burden of establishing his entitlement to relief under 18 U.S.C. § 3582(c)(1)(A).  *United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020); *United States v. Gold*, No. 15-CR-330, 2020 WL 2197839, at *1 (N.D. Ill. May 6, 2020). Title 18 U.S.C. § 3582(c)(1)(A) provides that:

the court, upon motion of the Director of the Bureau of Prisons, or upon motion

>of the defendant after the defendant has fully exhausted [all administrative remedies], may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
>>(i) extraordinary and compelling reasons warrant such a reduction; or
>>(ii) the defendant is at least 70 years of age, has served at least 30 years in prison…for the offense or offenses for which the defendant is currently imprisoned…;
>
>and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission….

Pursuant to 18 U.S.C § 3582(c)(1)(A), a defendant moving for compassionate release must exhaust all administrative remedies within the BOP (or thirty days must have elapsed from the defendant's request for compassionate release to the warden of his prison facility) prior to seeking relief from the Court. In the present case, the Government states that it "agrees that Cole made a reduction request to the Warden at his facility. The Warden received and reviewed his request and determined that he did not satisfy the medical components required for a Reduction in Sentence and denied the appeal on that ruling on January 21, 2021." Thus, exhaustion of administrative remedies is not at issue in this case.

This Court may reduce Cole's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The Sentencing Commission has also issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). This policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons

3

warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

With respect to the first criteria, extraordinary and compelling reason, per 18 U.S.C. § 3582(c)(1)(A), courts are to look to the policy statements contained within the United States Sentencing Guidelines to determine what constitutes extraordinary and compelling reasons under the statute. *See United States v. Russell*, No. 1:14-CR-6-HAB, 2020 WL 2989160 at *7 (N.D. Ind. June 4, 2020) (citing 28 U.S.C. § 994(t)). However, because the guidelines have not yet been amended in the wake of passage of the First Step Act of 2018, Pub. L. No. 115-391, § 603(b), the Seventh Circuit has held that the guidelines policy statement defining extraordinary and compelling reasons is not binding upon the district courts in their consideration of motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). However, "§ 1B1.13 and its application notes provide useful … guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v. Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938 F.3d at 1180). "The substantive aspects of the Sentencing Commission's analysis in §1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons….'" *Gunn*, 938 F.3d at 1180. The court further cautioned that "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*.

The guidelines policy statement states that a defendant's medical condition may qualify as an extraordinary and compelling circumstance if the defendant is suffering from a terminal illness

4

or suffering from a serious physical or mental condition which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 n. 1(A). Using this language as guidance, this Court must determine whether Cole's alleged medical conditions, combined with the circumstances of the global COVID-19 pandemic, constitutes an extraordinary and compelling circumstance which warrants Cole's release from prison nearly six years prior to his projected release date.

As many courts across the country have noted, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). When a defendant moves for compassionate release based, at least in part, on COVID-19, Courts have considered the following in determining whether the defendant has presented an extraordinary and compelling circumstance: "(1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic." *United States v. Root*, No. 1:11-CR-69-HAB-SLC, 2020 WL 4783635 at *2 (N.D. Ind. Aug. 18, 2020). Courts also consider factors related to the circumstances which exist at the facility at which the defendant is imprisoned in conjunction with his personal health conditions. *Id*.

This Court agrees with the Government that Cole does not have a medical condition that qualifies as an extraordinary and compelling circumstance. He is not suffering from a terminal illness or suffering from a serious physical or mental condition which "substantially diminishes his

5

ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 n. 1(A). However, if Cole has a medical condition which the Centers for Disease Control and Prevention (CDC) recognizes as one of eight conditions which may result in increased risk of severe illness if the inmate were to contract COVID-19, the Court may consider the existence of this condition as an extraordinary and compelling circumstance warranting early release. *See, e.g., United States v. Lawrence*, No. 2:18-CR-59, 2020 WL 3566930 at *2 (D. Vt. July 1, 2020). Cole alleges that the existence of COVID-19 combined with his asthma (moderate to severe), high blood pressure, and Type 2 diabetes mellitus constitute extraordinary and compelling circumstances justifying his release. (DE 105).

As noted, Cole is 43 years old. According to the PSIR, at the time of his sentencing, Cole was 5'5" and weighed 175 pounds. Cole advised probation that he suffered from asthma but was not taking any prescription medication or under the care of a physician. Cole believed himself to be of sound mind and in good emotional health. (DE 38, ¶¶ 82-84)

Cole asserts in his current motion that he has asthma and has trouble breathing. According to the CDC, persons with asthma, moderate to severe, might be at an increased risk of severe illness from COVID-19. *See CDC, People with Certain Medical Conditions*. However, as the Government points out, not all medical professionals agree that asthma poses an elevated risk for contraction of a severe case of COVID-19. A May 2020 article published by the American Association of Retired Persons (AARP) quoted Dr. Benjamin J. Seides, M.D., director of interventional pulmonology at Northwestern Medicine Central DuPage Hospital, as saying that "[a]sthma really hasn't shaken out to be a significant risk factor." Howard, Beth, "COVID-19

6

Risks to People with Asthma Much Lower than Expected" According to the American Academy of Allergy, Asthma and Immunology (AAAAI), "there is no evidence of increased [COVID-19] infection rates in those with asthma." Moore, Andrew, MD, "COVID-19 and Asthma: What Patients Need to Know." The AAAAI also notes that "although the [CDC] states that patients with moderate-severe asthma could be at greater risk for more severe disease, there are no published data to support this determination at this time." *Id*. Additionally, in a research letter published in the Annals of the American Thoracic Society which examined data from several published studies about COVID-19 risk factors, the authors note that, "Despite early concern about disproportionately high morbidity and mortality for those with asthma, data presented [in the several reviewed studies] show minimal evidence of a clinically significant relationship." Broadhurst, Richard, et al., Annals of the American Thoracic Society, "Asthma in COVID-19 Hospitalizations: An Overestimated Risk Factor?"

The Government argues that Cole's unverified report of severe to moderate asthma does not establish conclusively that he has a condition which places him at higher risk of a serious COVID-19 infection. In fact, Cole's medical records do not evidence any current negative effects on his health from asthma. *See United States v. Washington*, No. 14-CR-215, 2020 WL 1969301 at *4 (W.D.N.Y. Apr. 24, 2020) (a "generalized claim of asthma, without more, is not a sufficiently extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)").

Despite Cole's failure to elaborate on his diagnosis and thus his failure to carry his burden in showing that an extraordinary and compelling circumstance exists sufficient for a grant of compassionate release under the guidelines policy statement, the Government has obtained Cole's

7

medical records from the BOP. During his Presentence Investigation Report, Cole selfreported a history of asthma. (DE 38 ¶ 83). At that point, Cole indicated that he was not taking any medications for the issue. *Id*. A review of Cole's medical records show asthma as part of his medical history but not rising to the level of severe or moderate. (Gov. Ex. 2 at 45). At checkups on February 3, 2016 and December 8, 2017, Cole informed medical personnel an albuterol inhaler was no longer needed. (Govt. Ex. 3 at 35). The condition now appears in Cole's medical history as "Resolved." (Govt. Ex. 1 at 17). There is no evidence to show that the defendant's condition is "moderate to severe." *See United States v. Miles*, No. 2:17-CR-127-KJM, 2020 WL 3256923, at *3 (E.D. Cal. June 16, 2020). Rather, the medical records show that Cole's asthma is well-controlled and that it is being appropriately treated within the BOP.

Cole also asserts that he has hypertension. Hypertension is defined as blood pressure above 140-90 and is considered severe if the pressure is above 180-120. According to the CDC, persons with hypertension or high blood pressure, might be at an increased risk of severe illness from COVID-19. *See* CDC, People with Certain Medical Conditions. Uncontrolled blood pressure can lead to heart disease. Cole has a recent history of elevated blood pressure with ranges that put him in the hypertension category. (Govt. Ex. 1 at 8). Cole has been prescribed medication to control his high blood pressure. (Govt. Ex. 1 at 2, 16). On January 11, 2021 Cole reported taking his medications as directed, exercise[ing] Monday through Friday…denying any chest pain, SOB or palpitations." (Govt. Ex. 1 at 4). The documentation in Cole's medical records support that his hypertension is currently controlled. (Govt. Ex. 1 at 2; Govt. Ex. 2 at 1, 53).

On January 11, 2021, Cole was prescribed hydrochlorothiazide, 37.5mg, increased from 25mg previously, to deal with his hypertension. (Gov. Ex. 1 at 5). It appears that the BOP is

8

adequately addressing Cole's concern about his hypertension. Cole's hypertension has also not resulted in any restrictions from engaging in sports, work, or exercise. (Gov. Ex. 1 at 32; Gov. Ex. 2 at 80). The only restrictions in the previous three years related to a hernia. *Id*. Cole has provided no reason why his hypertension constitutes an extraordinary or compelling reason for his release.

Cole also asserts in his motion that he has Type 2 diabetes mellitus. The Government concedes that according to the CDC persons with Type 2 diabetes mellitus are at an increased risk of severe illness from COVID-19. *See* CDC, People with Certain Medical Conditions. A review of Cole's medical records reveals that BOP physicians are aware of Cole's diabetic condition and are treating it adequately. (Govt. Ex. 2 at 10). Cole is prescribed aspirin and metformin, a change from the 2019 prescription of metoprolol tartrate. (Govt. Ex. 2 at 10, 18, 27). Cole has also attended counseling and classes for diabetes management and been advised of the importance of controlling his dietary intake. (Govt. Ex. 2 at 43, 62). Since 2019, Cole has not presented for medical assistance with diabetes as his complaint. (Govt. Ex. 1; Govt. Ex. 2).

There is no information in Cole's motions or in the medical records that suggests he is unable to self-care. *See United States v. McCloud*, No. 1:17-CR-57- HAB, 2020 WL 5406182 at *3 (N.D. Ind. Sept. 9, 2020) (Even if the defendant has COVID-19 risk factor medical condition[s], Court must still analyze whether he has ability to self-care). Cole's release plan calls for him to live with his cousin and that he intends to work as a Union Labor Worker if released. (DE 105 at 7). This level of activity indicates that he is capable of much more than self-care. *Id*. Given Cole's good health, with underlying conditions managed by BOP physicians, and his ability to care for himself, Cole has not set forth facts which amount to extraordinary and compelling

9

circumstances justifying his early release.

In any event, as the Government reports, the BOP is working with the CDC to ensure that the BOP receives the COVID-19 vaccine as it becomes available. As of December 30, 2020, doses of the vaccine were delivered to nineteen BOP facilities. Priority for vaccine distribution is given to full-time staff members in order to mitigate the risk of staff members introducing the virus into the prison from the community. Additional vaccines are given to inmates beginning with those who are deemed to be at high risk. As of February 12, 2021, the CDC reports that 45,577 doses of the vaccine have been distributed through the BOP.[1]

Per the BOP, the defendant is currently incarcerated at FCI Oakdale in Oakdale, Louisiana, a facility which currently houses 864 inmates. As of January 12, 2021, the BOP reports that there is currently 1 COVID-positive inmate and 25 COVID-positive staff at the facility. BOP, COVID-19 Update, available at: https://www.bop.gov/coronavirus/. Seven inmates have died from COVID-19 at the facility. *Id*. The BOP reports that there are 229 inmates and 21 staff members who have recovered from COVID-19 infections at the facility. *Id*.

Additionally, the Government correctly points out that the COVID-19 pandemic has not spared Allen County, Indiana, the community to which Cole presumably proposes to return if he were granted release. As of March 28, 2021, there have been 37,644 reported positive cases of COVID-19 and 663 deaths from the illness in Allen County.[2] New cases are reported in Allen County daily, indicating community spread. *Id*. There is no guarantee that releasing Cole to live in

---

[1] CDC COVID Data Tracker (Vaccines), available at: https://covid.cdc.gov covid-datatracker/# vaccinations.

[2] COVID-19 Dashboard and Map, available at: https://www.coronavirus.in.gov/.

Fort Wayne, Indiana or any other community would diminish his risk of contracting COVID-19. Indeed, the BOP reports that four inmates have died from COVID-19 after their release to home confinement.³

Further, the government argues that Cole represents a danger to the community. Cole was involved in significant crack cocaine distribution, such that investigators completed buys of large quantities from Cole in successive days and found Cole to be in possession of a very large quantity of crack cocaine within the same week. (DE 38 ¶¶ 21-31). Cole also possessed a pistol while being a felon, keeping it in close proximity to his crack cocaine stash. (DE 38 ¶ 23-24). Armed drug trafficking presents a significant risk of danger to the community. Additionally, Cole has an extensive criminal history, dating back to his age fourteen (14) burglary delinquency adjudications and continuing through two subsequent violent offenses of battery, first as a juvenile followed by an adult conviction. (DE 38 ¶¶ 52-56). From that point, Cole's criminal history consists of drug dealing convictions, beginning with a ten year sentence for dealing Cocaine in 1996 out of Allen County, Indiana. (DE 38 ¶ 58). Cole next encountered the federal system with a conviction for Possession with Intent to Distribute Crack Cocaine, receiving an eighty-four (84) month sentence in 2001. (DE 38 ¶ 61). While under federal supervised release, Cole committed the gun and drug offenses for which he is now serving his sentence. (DE 38 ¶ 70).

The Government also maintains that a reduction in Cole's sentence at this time would also endanger the community because the Court's ability to effectively monitor those on supervised release is curtailed during the pandemic. Cole has not provided a release plan in his motion beyond saying that he would live with his cousin, so it is unclear at this time what residence Cole

---

³ BOP, COVID-19 Update, available at: https://www.bop.gov/coronavirus/.

would be entering upon release. The Government concludes that this lack of release plan is yet another reason why Cole does not merit compassionate release. *See United States v. Allison*, No. CR16-5207RBL, 2020 WL 3077150, at *4 (W.D. Wash. June 10, 2020).

Next, the Government argues that Cole has not shown that the factors set forth under 18 U.S.C. § 3553(a) support his release. The Court imposed a 240 month sentence, which represented a sentence just below the low end of the applicable sentencing guidelines (262-327 months), to reflect the seriousness of Cole's crime and to provide just punishment for the offense. (DE 38 ¶ 48). Such goals could not be achieved if the Court were to release the Cole now, nearly six years prior to the projected end of his sentence. The Court's imposed sentence was just and commensurate with sentences imposed on other similarly situated defendants. Additionally, a lesser sentence could not achieve the Court's goal of deterring Cole from the commission of other serious crimes.

Accordingly, for all the above reasons, Cole's motion for compassionate relief will be denied. Further, as the facts and law are clear on all of the issues raised, appointment of counsel to Cole would not change the result. Thus, his motion for appointment of counsel will also be denied.

Conclusion

On the basis of the foregoing, Cole's request for compassionate relief (DE 105) and motion for appointment of counsel (DE 106) are both hereby DENIED.

Entered: March 31, 2021.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court